Maxwell B. LLEWELLYN and Gertrude
Llewellyn, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 13293.

United States Court of Appeals
Seventh Circuit.

Nov. 7, 1961.

Hiram M. Nowlan, Janesville, Wis.,
for petitioner.

Lee A. Jackson, Chief, Appellate Sec-
tion, Harold M. Seidel, Attorney, U. S.
Department of Justice, Washington, D.
C., Louis F. Oberdorfer, Asst. Atty. Gen.,
Robert N. Anderson, Attorney, Depart-
ment of Justice, Washington, D. C., for
respondent.

Before HASTINGS, Chief Judge, and
SCHNACKENBERG and KNOCH, Cir-
cuit Judges.

KNOCH, Circuit Judge.

The petitioners, Maxwell B. Llewellyn
and Gertrude Llewellyn, his wife, seek re-
view of the Tax Court's decision sustain-
ing the Commissioner's determination of
deficiencies and additions respecting peti-
tioners' income taxes for the years 1953
and 1954. Mrs. Llewellyn is a party only
because she and her husband filed joint
returns.

Dr. Maxwell B. Llewellyn entered into
written agreements (which were in effect
during the taxable years in question)
with Fort Atkinson Hospital, Fort At-
kinson, Wisconsin, and Mercy Hospital,
Janesville, Wisconsin, to perform services
for these two hospitals as a pathologist
and as director of their clinical and path-
ological laboratories. Under these agree-
ments, Dr. Llewellyn was to receive a
stated percentage (30% at Fort Atkinson
Hospital and 25% at Mercy Hospital) of
the monthly gross receipts of their labo-
ratories, subject to certain adjustments
which are not pertinent here. The Fort
Atkinson agreement provided for a set
period, automatically renewable and sub-

ject to termination by either party on 90 days' notice. The Mercy agreement was to be effective as long as Dr. Llewellyn performed his duties under its terms.

Under amendments executed in December, 1953, both hospitals agreed to subtract stated sums from the percentage of the monthly gross receipts otherwise due Dr. Llewellyn for November and December, 1953, and for all subsequent months (unless otherwise amended) and to remit these sums directly to Phoenix Mutual Life Insurance Company of Hartford, Connecticut, at its Milwaukee office, for purchase of a retirement income annuity policy, for such other annuity contracts as the subtracted sums would provide, and for payment of premiums on existing contracts. These sums were to go directly to Phoenix Mutual. Dr. Llewellyn was to be the sole owner and beneficiary under the annuity contracts, and the hospitals were to notify Dr. Llewellyn if payments were not made and to advise him of the reasons for any such non-payment.

The hospitals made the agreed deductions and sent the sums to Phoenix Mutual during the years in question. Phoenix Mutual issued retirement income annuity policies to Dr. Llewellyn in response to applications made by Dr. Llewellyn as the proposed insured. The policies were sent to Dr. Llewellyn who retained them in his possession, custody and control, until 1956 when he assigned them to a bank as collateral for a loan. The remittances made by the hospitals to Phoenix Mutual were not reported as income to Dr. Llewellyn.

Before the amendment was executed, Dr. Llewellyn's attorney wrote to Sr. Mary Mira, R.S.M., Superior of the Provincial House and member of the governing board of Mercy Hospital, that Dr. Llewellyn wished part of the moneys due him from Mercy Hospital to be paid directly to Phoenix Mutual for purchase of an annuity contract, and that:

"* * * All of these amounts, of course, are to be credited by the hospital against sums that otherwise would be owing and payable directly to the pathologist under his existing contractual basis for compensation."

Dr. Llewellyn's attorney also advised Sr. Mary Mira that he knew of no possible liability to which Mercy Hospital might be exposed by paying premiums directly to the insurance company at Dr. Llewellyn's request, but that to avoid any question with respect thereto, a release and indemnity agreement from Dr. Llewellyn to the hospital had been prepared to save the hospital harmless in this procedure of paying Dr. Llewellyn's compensation under his contract. Dr. Llewellyn contends that as his employers, the two hospitals purchased annuity policies for him, within the purview of the provisions of Section 22(b) (2) (B), Internal Revenue Code of 1939,[1] and Section 403(a) (1), Internal Revenue Code of 1954.[2]

Dr. Llewellyn argues that by virtue of the December, 1953, amend-

1. "Employees' annuities. If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23(p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101(6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. * * *"

2. "General Rule.—Except as provided in paragraph (2), if an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 404(a) (2), or if an annuity contract is purchased for an employee by an employer described in section 501(c) (3) which is exempt from tax under section 501(a), the employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities) except that section 72(e) (3) shall not apply."

ments to his employment contracts with the two hospitals, his compensation under those contracts was decreased by the amount of the deductions and that the annuity policies here involved were paid for by his employers. The Commissioner's position is that Dr. Llewellyn's compensation under the contracts was not reduced; that at his request a portion of his compensation was diverted in accordance with his directions. Hence the sums paid to Phoenix Mutual were payments made, in effect, by Dr. Llewellyn himself. The cited sections of the Revenue Codes of 1939 and 1954, supra, apply only to sums contributed by an employer out of its own, not the employee's funds. These sections do not apply to amounts paid by the employer out of employee's compensation, at the employee's direction.

 This very question was considered in Zeltzerman v. C.I.R., 34 T.C. 73, 82, affirmed per curiam, 1 Cir., 1960, 283 F.2d 514. In that case, the Tax Court held:

> "We think it obvious that in legislating with respect to annuity contracts purchased by exempt employers, Congress had in mind the usual type of annuity purchased by an employer out of its funds or by use of its funds and also contributions made by the employee. Of course, any contributions made by the employee would first have constituted taxable income to the employee. [Citing cases]"

The amounts deducted from Dr. Llewellyn's percentage of the gross receipts and paid out, at his direction, to Phoenix Mutual, were not employers' contributions, but were income constructively received by Dr. Llewellyn and as such constituted taxable income to him.

Dr. Llewellyn attempts to distinguish the Zeltzerman case on the basis of slight changes in fact in that Dr. Llewellyn had a written contract of employment, which was amended by a written instrument, and that he gave up the right, for the duration of the term of the contract as amended, to receive any of the withheld money or to change the amounts designated for purchase of annuity policies. We do not agree that any of these elements affect the basic principle that in the Zeltzerman case, as here, the cited sections of the Code were held to apply only to contributions made by employers out of their own funds.

The form adopted by the parties is not controlling. The Tax Court properly looked to the substance of the transaction. Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596. In effect, Dr. Llewellyn made anticipatory assignments of part of his income to Phoenix Mutual.

We have considered all other points raised on behalf of Dr. Llewellyn and find them without merit. The decision of the Tax Court is affirmed.