TRUSTEES OF AMHERST COLLEGE & another *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION & another[1]
(and two companion cases).

Suffolk.   May 9, 1968. — June 14, 1968.

Present: WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Taxation,* Income tax.  *Annuity.*

Neither the amount paid by a charitable corporation for the premium
on an annuity contract purchased by it for its employee, after deduct-
ing such amount from his salary pursuant to his irrevocable election
for one year to participate in its retirement plan, nor the annuity
contract, was "income . . . received" by the employee within G. L.
c. 62, § 5, as amended through St. 1966, c. 698, §§ 4, 6, nor was it
taxable to him as such thereunder, where it appeared that the contract
was fully vested in the employee, was nonassignable, and had no cash
surrender or loan value.

THREE BILLS IN EQUITY filed in the Supreme Judicial
Court for the county of Suffolk, two on October 20, 1967,
and one on November 2, 1967.

The cases were reserved and reported by *Kirk,* J., with-
out decision.

*H. Brian Holland* for the Trustees of Amherst College &
another (*Harold Hestnes,* for Trustees of Boston University &
another, with him); *Robert J. McGee & Casimir DeRham, Jr.,*
for Northeastern University & another, also with him.

*Howard M. Miller,* Assistant Attorney General, for the
defendants.

WHITTEMORE, J.   Three bills of complaint for declaratory
decree were reserved and reported by a single justice,
without decision, and have been consolidated for argument
and decision.   As the defendants' brief states, except for
minor differences, the facts of all three cases are the same.
The issue is whether, under G. L. c. 62, § 5, as amended
through St. 1966, c. 698, §§ 4, 6, certain amounts deducted
from the salaries of the employees of three charitable cor-

[1] The State Tax Commission.

porations and used to purchase annuity contracts are "income . . . received" by the employees during the taxable year in which the amounts deducted would otherwise be payable.

The trustees of Amherst College and of Boston University, and Northeastern University (collectively the institutions) have for some time maintained retirement plans for the benefit of professors, certain junior faculty, and administrators. Under the plans, contributions of the employer and the employee are used to purchase annuity contracts offered by the Teachers Insurance and Annuity Association of America (TIAA) or the College Retirement Equities Fund (CREF).[2]

Between 1961 and 1965 each of the institutions advised all participants that they might elect to have their salaries reduced and the amount of such reductions applied by their employer in payment of premiums on annuity contracts issued by TIAA or CREF. The amount of such a voluntary salary reduction may not exceed the participant's so called exclusion allowance as defined in § 403 (b) (2) of the Internal Revenue Code of 1954.[3] Under each agreement an election once made is binding for one year. Thereafter it may be ended with one month's notice. Termination does not affect the disposition of salary for any period prior to termination. The intent of the agreements is to give to the employee in respect of Federal income taxes the benefit of the exclusion allowance. See Sen. Rep. No. 1983, 85th Cong., 2d Sess. p. 36; Technical Amendments Act of 1958, § 23, 72 Stat. 1606, 1620.

---

[2] Participation is mandatory in the case of Amherst and Boston and strongly recommended in the case of Northeastern. The contracts issued to the participants are fully vested and nonassignable and have no cash surrender or loan value, except that, in the case of Northeastern, when a participant has contributed for less than five years or has accumulations amounting to less than $2,000, TIAA or CREF may repurchase the contracts with the consent of Northeastern.

[3] The exclusion allowance for any taxable year is an amount equal to the excess of (A) twenty per cent of the employee's includible compensation, multiplied by the number of years of service over (B) the aggregate of the amounts contributed by the employer for annuity contracts and excludable from the employee's gross income for any prior taxable year.

The Commissioner of Corporations and Taxation ruled that the payments which would otherwise be received as salary are income received by the participants within G. L. c. 62, § 5, and therefore are taxable. The Commissioner contends that, in the absence of express statutory authority in this Commonwealth, Federal decisions prior to the enactment of the statute authorizing the exclusion allowance reflect the sound view of such dispositions of salary as are here shown. He asks us to follow *Llewellyn* v. *Commissioner of Int. Rev.* 295 F. 2d 649, 651 (7th Cir.), where the court said, "The amounts deducted [by the employing hospitals] from Dr. Llewellyn's percentage of the gross receipts and paid out, at his direction, to Phoenix Mutual [for the purchase of an annuity], were not employers' contributions, but were income constructively received by . . . [him] and as such constituted taxable income to him."

The issues are the narrow ones whether under our decisions the income was "received" for purposes of G. L. c. 62, § 5, and, if not, whether the increased annuity benefits purchased by the premium payments confer such a present economic benefit as to be taxable. The issue is not whether the State *could* impose a tax on the employees because of their earning the amount of the salary deductions (see *Lucas, Commr. of Int. Rev.* v. *Earl,* 281 U. S. 111; *Burnet, Commr. of Int. Rev.* v. *Leininger,* 285 U. S. 136) but whether G. L. c. 62, § 5, has done so.

The history and provisions of the Federal and State statutes differ and Federal precedents are to be used with caution. See *Dexter* v. *State Tax Commn.* 350 Mass. 380, 382–383, and cases cited. Taxing statutes are strictly construed. *Commissioner of Corps. & Taxn.* v. *Fopiano,* 324 Mass. 304, 307. Our present construction should be consistent with our prior holdings.

"Even if the income was of a taxable nature, the taxpayer was not subject to the tax unless it was received by him within the meaning of the statute. The word 'received' appearing in the statute must be interpreted by giving the word its ordinary and general meaning, determined by the

context and the purpose to be accomplished by the enactment." *Commissioner of Corps. & Taxn.* v. *Williston,* 315 Mass. 648, 649.

An employee under one of these agreements enjoys no present material benefit from a premium paid that is equivalent to the receipt of the amount as income. As soon as he signs up he loses control of the portion of his salary which is thereafter to be deducted. He is, as noted, bound to his decision for one full year and on termination he may not recover any of the full year or more salary which had been deducted, except in the case of the Northeastern employees in certain circumstances discussed below. If he should decide again to join the plan, he is again bound to one full year's contribution. The agreement can affect only salary not yet earned. The annuities are, as noted, not assignable and have no loan value. This, therefore, is not just a device to escape tax liability while retaining for all intents and purposes full use of the funds.

All that the employee gets under these contracts is the right to receive at a future date annuity payments as compensation for present services.[4] This is not income received in the amount of the deducted salary. In *Commissioner of Corps. & Taxn.* v. *Kellaway,* 317 Mass. 192, an employer purchased an annuity policy at a cost of $13,500 for an employee as a reward for faithful service. This court held that the Appellate Tax Board rightly decided that the Commissioner might not tax the amount of the employer's single lump sum premium payment as employee's income and ruled that the premium was not "received" by him. On the evidence there was no surrender value and the policy had no fair market value. The taxpayer could not have converted his policy into any sum of money. As the case was presented, the court did not reach the question whether there was a present value of the annuity policy which constituted income. See also *Bingham* v. *Commissioner of Corps. & Taxn.* 249 Mass. 79, 81. ("Income indicates increase of

---

[4] For the taxability of the annuity payments when received, see *Bacon* v. *Commissioner of Corps. & Taxn.* 266 Mass. 547.

wealth in hand out of which money may be taken to satisfy the enforced pecuniary contributions levied to help bear the public expenses.")

This court held in the *Williston* case (315 Mass. 651) that a "constructive receipt of income . . . cannot be held to be the equivalent of an actual receipt, unless it can be seen that the taxpayer enjoys substantially the same material and objective benefits from the constructive receipt that he would enjoy if the income were paid directly to him or at least that he receives some economic or tangible advantage therefrom." Under this rule we think that it does not help the Commissioner to characterize what happened as a constructive receipt of income.

Undoubtedly under these contracts the employee gains as a present benefit a realization of a more secure future. That, we think, is not translatable into an amount of taxable income. In the *Williston* case (315 Mass. at p. 652) this court noted the personal gratification which the taxpayer gained when he made his gift of bond coupons to his daughter but said that that was "not an exchange for money or for money's worth or for anything of economic value. The law cannot value such a mental condition."

The case of *State Tax Commn.* v. *Fitts*, 340 Mass. 575, 579–580, is distinguishable. There the taxpayers, in anticipation of the liquidation of a corporation of which they were stockholders, transferred the stock of the corporation to an out-of-state revocable trust. Thereafter the trust received liquidating dividends from the corporation. "Because the taxpayers at any time after the dividends went into the trusts could readily have obtained them, the taxpayers . . . [were] deemed to have 'received' them . . . ." The requirement of consent by a trustee who was, respectively, the brother and brother-in-law of the donors was held to be no impediment to the revocation by the donors as there were no standards and it was to be assumed that he would be amenable to the donor's wishes. See also *Dewey* v. *State Tax Commn.* 346 Mass. 43.

The Commissioner has not contended that the variation in

the Northeastern contracts affects the result. Complete amenability of the insurers and the institutions to a proposal that the insurers exercise the limited repurchase rights is not to be presumed. This possibility does not give the employees present dominion over the funds used.

Decrees are to enter in the county court that neither the payments used to purchase annuity contracts nor such contracts are income received.

*So ordered.*