Roger K. Haugen and Hope L. Haugen v. Commissioner.
Haugen v. Commissioner
Docket No. 3604-69.
United States Tax Court
T.C. Memo 1971-294; 1971 Tax Ct. Memo LEXIS 38; 30 T.C.M. (CCH) 1247; T.C.M. (RIA) 71294; November 18, 1971, Filed *38 Petitioner was director of the pathology department of Holy Cross Hospital, Fort Lauderdale, Florida. The hospital withheld an amount from the compensation earned by the petitioner, and paid it to Franklin Life Insurance Co. to acquire a nonforfeitable annuity for petitioner. Held, petitioner was an employee within the context of sec. 403(b), I.R.C. 1954, thereby permitting exclusion of the amounts paid for the annuity from petitioner's income. Richard W. Roe, 2900 E. Oakland Park Blvd., Fort Lauderdale, Fla., for the petitioners. Meno W. Piliaris, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined deficiencies in the petitioners' Federal income tax, as follows: Taxable Year
Amount
1965
$2,187.02
1966
711.43
1967
6,269.30
Due to concessions, the only issue remaining for adjudication is whether petitioner, Roger K. Haugen, was an employee of Holy Cross Hospital, Fort Lauderdale, Florida, or an independent contractor for purposes of determining whether the payments made to acquire an annuity are excludable under section 403(b), I.R.C. 1954. [1] *39 Findings of Fact Some of the facts have been stipulated and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Roger K. and Hope L. Haugen, husband and wife, lived in Fort Lauderdale, Florida, at the time the 1248 petition in this case was filed. They filed their joint Federal income tax returns, using the cash method, for the taxable years 1965, 1966, and 1967 with the district director of internal revenue at Jacksonville, Florida. Roger K. Haugen will be hereinafter referred to as petitioner. Petitioner, during the years involved was a physician licensed to practice in the State of Florida, and specializing in the practice of pathology. In 1955 he was employed as Associate Broward County Medical Examiner and was so employed during the years before the Court. Holy Cross Hospital, Fort Lauderdale, Florida, hereinafter referred to as Holy Cross or hospital, was completed in 1955 and petitioner was also employed there as its first chief pathologist. The hospital is an organization described in section 501(c)(3) which is exempt from tax *40 under section 501(a). Petitioner's agreement with Holy Cross was oral and was subject to termination by him or the hospital without notice or cause. At the time petitioner became associated with the hospital there was no discussion as to whether he was to be an employee or independent contractor. Petitioner's scope of authority consisted of supervising and operating the entire clinical laboratory of the hospital, thereby necessitating both medical and administrative duties. The agreement provided that he would be allowed to continue as Broward County Medical Examiner, but that he could not engage in private practice. His compensation consisted of 20 percent of the gross collected income of the hospital laboratory. At the end of each month the Holy Cross accounting department would compute the amount of fees billed by the pathology department and would provide petitioner with a statement showing the fees billed, the gross amount due petitioner, the amount of annuity premiums withheld by Holy Cross and paid directly to the insurance company and the net amount payable directly to petitioner. Holy Cross would issue to petitioner its check for the net amount at the same time the monthly *41 statements were rendered. The following schedule discloses the gross compensation due to petitioner, the amount of annuity premiums and the net amount paid directly to petitioner for the years in question. Gross
Annuity
Net Paid to
Year
Compensation
Premium
Dr. Haugen [2]
1965
$ 82,694.30
$ 2,556.84
$ 80,137.46
1966
101,219.06
2,556.84
98,662.22
1967
115,477.69
10,809.21
104,668.48 These premiums were withheld by Holy Cross from the compensation earned by petitioner and were paid to Franklin Life Insurance Company (hereinafter referred to as Franklin), to acquire a nonforfeitable annuity for petitioner. This annuity contract was initially entered into on July 1, 1957, when Franklin issued its policy to Holy Cross, the purchaser and owner, on behalf of petitioner, the insured. In preparing his Federal income tax returns for the years in question the petitioner did not include the premiums in his taxable income. For each of the years 1965, 1966 and 1967, the petitioner, *42 relying on the advice of his accountant, reported the amounts received from Holy Cross on Schedule C, Profit (or Loss) From Business Or Profession. He represented that his principal business activity was "physician-pathologist" and that his business location was Holy Cross. The hospital did not withhold as taxes any amounts due under the Federal Insurance Contributions Act, Federal Unemployment Tax Act or the Federal income tax laws; nor did it issue a Form W-2 Wage and Tax Statement relating to wages and Federal income tax withheld for the years 1965 and 1966. It did deliver a Form W-2 to petitioner for 1967, although nothing was withheld from the compensation. During the years here involved, petitioner was not a participant under any of the hospital employee benefit plans for (1) vacation, (2) sick leave, (3) severance pay, (4) life and accident insurance, and (5) increments in compensation for length of service. The petitioner was not covered by the hospital under workmen's compensation and he purchased his own malpractice insurance. In 1966, he, along with 14 other hospital associates, received a 10-year service pin in recognition of their service to the hospital. In this regard *43 the Holy Cross newsletter, the "Stethoscope," stated, "our first group of 10-year Service Pins will be presented to 15 members of the Holy Cross family. * * * Twenty-eight other employees will be 'pinned' for five years of service." Holy Cross provided the space, equipment and supplies for the pathology 1249 department. The department was subdivided into specialized sections consisting of blood bank, hematology, urine analyses, biochemistry, special chemistry, bacteriology, parasitology, and radioactive isotopes. The hospital also furnished and paid the majority of the personnel, approximately 23 persons, who were necessary to the operation of the pathology department. However, the petitioner did employ several assistants to aid him in the operation of the department. These physicians were paid out of the 20 percent the petitioner received from the hospital. During the years before this Court the petitioner made the following payments to his assistants: 1965 - Assistant's Fees $23,740.00
1966 - Assistant's Fees
Dr. Rupp
$ 9,500.00
Dr. McGarry
18,000.00
Myrtle Petru- hertch 1,200.00
$28,700.00
1967 - Assistant's Fees
Dr. Rupp
$13,666.65
Dr. McGarry
18,833.30
Myrtle Petru- hertch 795.00
$33,294.95
*44 The payments were made on the petitioner's personal checking account, out of which he paid personal and business expenses; he maintained no "business" bank account. The laboratory fees were determined by the administration, based on recommendations made by petitioner and were sent to the patients on hospital stationery; petitioner never rendered separate bills to patients or their referring physicians. The budget for the department was prepared by petitioner and was subject to final approval by the hospital administration. The administrators had little if any actual control over the medical functions carried out by the petitioner in the laboratory since they were lay people, thereby unfamiliar with medical procedure. Petitioner did not maintain a personal office outside Holy Cross and he never sent out any announcements as to the opening of an office, his availability or his profession. He did, however, retain a small office in his position as Medical Examiner; however petitioner spent little, if any time there as it was used primarily by the clerical help. He had no business stationery or business cards and his only listing in the telephone directory was in the white pages under his *45 residence. He is listed with the American Medical Association as a hospital-based physician. In his capacity as Broward County Medical Examiner, petitioner investigated cases of death from accident, suicide, homicide, etc. Most of this work was performed in the laboratory at Holy Cross; however, he was, at the request of the police, required on occasion to leave the hospital to examine a death scene. In this connection petitioner incurred automobile expenses which he deducted on his Federal income tax return. During the years here involved petitioner, as Medical Examiner, earned the following: Year
Earnings
1965
$12,500.00
1966
12,499.76
1967
12,788.28
In addition to the income normally received from Holy Cross and from his employment as Medical Examiner petitioner usually received a small amount of income, $50 to $550 per year, from occasional autopsies and testifying as an expert witness. This additional income was reported as miscellaneous income on his Federal income tax return. On December 16, 1966, petitioner addressed a letter to Holy Cross which read, in part, as follows: "I hereby request that my salary contract be modified so that part of the compensation which otherwise would be *46 payable directly to me will instead be used in payment of annuity premiums under the terms of section 403(b) of the Internal Revenue Code." The letter was signed "Roger K. Haugen, M.D. (Employee)." On December 30, 1966, Holy Cross addressed a letter to petitioner which stated: "Your request for modification of salary contract has been approved." The letter was signed "Holy Cross Hospital, Inc. (Employer) by Sister M. Innocent, R.S.M., Administrator." Opinion The sole issue presented for determination relates to whether amounts paid by the hospital for an annuity are excludable from the petitioner's income within the context of section 403(b), [3] which states in part: 1250 SEC. 403(b). Taxability of Beneficiary Under Annuity Purchased by Section 501 (c)(3) Organization or Public School. - (1) General rule. - If - (A) an annuity contract is purchased - (i) for *47 an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a), * * * then amounts contributed by such employer for such annuity contract * * * shall be excluded from the gross income of the employee for the taxable year * * *. This decision rests upon whether the petitioner is considered to be an employee or an independent contractor of the hospital. The line between employee and independent contractor is truly an ill-defined boundary. However, it is clear that one cannot have a dual citizenship. Consequently we must determine the status of the taxpayer based on the evidence before us. The question is one of fact. See Chester C. Hand, Sr., 16 T.C. 1410 (1951). We have considered the facts presented, and though the decision is made difficult due to the many conflicting elements, we must conclude on all the evidence adduced that petitioner was an employee. In reaching this conclusion we particularly note the following factors. The oral contract entered into between petitioner and Holy Cross permitted the hospital to discharge petitioner without notice or cause, and prohibited petitioner from engaging in private practice; indicating a degree of *48 control exercisable by the hospital over petitioner. Further, Holy Cross provided the space, supplies and equipment used to run the laboratory. The administrators finalized the department's budget and they had ultimate control over the hiring of employees. Fees for services performed were set, with the advice of petitioner, by the hospital, and the fee statement was mailed on hospital stationery by the hospital; indicating the hospital's ability to control the operation of the laboratory and the administrative decisions made by petitioner. In addition, Holy Cross awarded petitioner, along with 14 other employees, a pin in recognition of 10 years of service. Petitioner was listed with the American Medical Association as a hospital-based physician. Petitioner did not have a private office, nor any business stationery, and his only telephone listing was his home; all factors indicative of a physician serving as an employee rather than one engaged in private practice as an independent contractor. Respondent points out, however, that the hospital had little if any control over petitioner's medical practices, thereby indicating the existence of an independent contractor status. Further, *49 he notes that petitioner was permitted to retain his position as Broward County Medical Examiner. He was not paid a salary but rather received 20 percent of the gross receipts of the pathology department. Holy Cross did not withhold FICA, FUTA or Federal income taxes. Petitioner filed a Schedule C and did not participate in hospital fringe benefits. And finally, he hired several physicians who assisted him and were paid directly by him. Admittedly, as noted above, these elements made the decision at hand a rather close one. However, we must point out that in Wendell E. James, 25 T.C. 1296 (1956), this Court held that the taxpayer, a physician specializing in pathology, was an employee of two independent hospitals despite the apparent lack of supervision exercisable by the hospitals, and despite the fact that the parties agreed to a fixed salary plus 10 percent of the receipts. In regard to the issue of control this Court noted the following: We are of the opinion that under the facts of this case, in which petitioner is a professional man, the control of the hospitals is sufficient to constitute petitioner an employee rather than an independent contractor. The methods by which professional *50 men work are prescribed by the techniques and standards of their professions. No layman should dictate to a lawyer how to try a case or to a doctor how to diagnose a disease. Therefore, the control of an employer over the manner in which professional employees shall conduct the duties of their positions must necessarily be more tenuous and general than the control over nonprofessional employees. Yet, despite this absence of direct control over the manner in which professional men shall conduct their professional activities, it cannot be doubted that many professional men are employees. See also J. G. Ellison, 55 T.C. 142 (1970). 1251 The degree of control exercisable by Holy Cross in the case at bar was no less than that present in the James case. The respondent's reliance on Azad v. United States, 388 F. 2d 74 (C.A. 8, 1968), affirming 277 F. Supp. 258 (D. Minn. 1966) is misplaced. In that case the hospital "stoutly maintained" that the taxpayer was not an employee and there was no evidence that the taxpayer, prior to the controversy there in issue, ever so considered himself. The evidence in the instant case is to the contrary. Upon an examination of the entire record we must conclude *51 that the petitioner was an employee within the context of section 403(b), thereby permitting exclusion of the amounts paid for the annuity from the petitioner's income. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.
2. It is unclear to this Court why the gross income reported on Schedule C of the 1965, 1966 and 1967 Federal income tax returns of the petitioner do not coincide with the amounts noted above under the column titled "Net paid to Dr. Haugen."↩
3. The parties have stipulated that the hospital was the purchaser-owner of the annuity. Therefore the question raised in Morris Zeltzerman, 34 T.C. 73 (1960), affirmed per curiam 283 F. 2d 514 (C.A. 1, 1960), and Llewellyn v. Commissioner, 295 F. 2d 649↩ (C.A. 7, 1961), affirming a Memorandum Opinion of this Court, is not in issue.