493 P.2d 920

**ARIZONA STATE TAX COMMISSION, a body corporate and politic, et al., Appellants,**

v.

**Castle O. REISER, Appellee.**

**No. 1 CA–CIV 1603.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 18, 1972.

Rehearing Denied April 24, 1972.

See 495 P.2d 1342.

Review Granted June 20, 1972.

Gary K. Nelson, Atty. Gen., by Leonard M. Bell, Asst. Atty. Gen., Phoenix, for appellants.

Jennings, Strouss & Salmon, by Lee E. Esch and Charles L. Strouss, Jr., Phoenix, for appellee.

JACOBSON, Judge.

The sole question on this appeal is whether the present Arizona income tax statutes allow the same deductions available to a taxpayer as are available under the Federal Internal Revenue Code for "tax-sheltered annuities."

This case comes to us as a class action [1] on a stipulated set of facts and was presented to the trial court by way of cross motions for summary judgment. The trial court granted the motion for summary judgment of appellee Castle O. Reiser (taxpayer) and denied the motion for summary judgment of appellant, Arizona State Tax Commission (Commission). The Commission has appealed.

The taxpayer instituted this action in superior court on behalf of himself and all others similarly situated, seeking a determination as to whether sums paid by the Arizona Board of Regents to designated annuity contractors pursuant to a salary reduction agreement were taxable as income to the taxpayer.

The taxpayer is employed as a professor of engineering at Arizona State University, his employer being the Arizona Board of Regents. Prior to the calendar years of 1965, 1966 and 1967, the taxpayer entered into an agreement with his employer which provided, in pertinent parts, as follows:

"Pursuant to the resolution entitled 'Resolution Adopting Annuity Contract

---

1. The propriety of the "class action" remedy in tax refund cases has not been raised on this appeal.

Program' adopted by the Board of Regents of the Universities and State College of Arizona at its meeting on December 29, 1962, you are hereby authorized and instructed to reduce my salary for the fiscal year 1964–65 by the amount of $1,800 from $13,600 to $11,800.

"It is understood and agreed that Arizona State University will purchase for me a nonforfeitable annuity from TIAA–CREF and will contribute upon account thereof the sum of $1,800 for such fiscal year at the rate of $75 per month to TIAA, at the rate of $75 per month to CREF ($150 per month for 12 months.)"

The resolution referred to in the agreement authorized the Board of Regents to purchase on behalf of employees of the Universities and State Colleges of Arizona, selected nonforfeitable annuity contracts under the provisions of § 403(b) of the Internal Revenue Code of 1954, as amended. This resolution was in turn authorized by A.R.S. § 15–1198, enacted in 1963. The initials used in the agreement (TIAA–CREF) refer to the Teachers' Insurance Annuity Association of America and the College Retirement Equity Fund.

Both of these annuity contractors, together with the plan of the Board of Regents providing for the tax shelter annuity plan received a favorable tax ruling from the Director of Internal Revenue Service, that is, sums expended by the Board of Regents in the purchase of annuities in a taxable year would not be included in the gross income of the employee for federal income tax purposes for such year. During the calendar years 1965, 1966 and 1967, the Board of Regents, pursuant to its agreement with the taxpayer, reduced the payment of salary to the taxpayer by the stipulated amount and purchased nonforfeitable annuities in the amount of the reduction and initially the taxpayer did not pay either federal or state income taxes on the amount of the reduction. The Commission subsequently gave notice to the taxpayer of assessments of additional taxes based upon the amounts withheld for these annuities. The taxpayer paid these assessments under protest and brought this action. There is no question that the amounts representing the purchase of these annuities were not taxable to the taxpayer for the taxable years involved under federal income tax law.

The basic contention by the Commission, both on appeal and before the trial court, is that while the federal income tax statutes have been amended to allow a reduction of salary for the purchase of nonforfeitable annuities to be excluded from the current gross income of the employee, the Arizona statutes have not undergone a similar amendment, and therefore these sums under Arizona law are to be included in gross income and therefore taxable.

A determination of this contention necessarily involves an analysis of the corresponding federal and state statutes and the judicial decisions interpreting the same.

The present wording of 26 U.S.C.A. § 403(b) of the Internal Revenue Code provides:

". . . [I]f . . . an annuity contract is purchased—(i) for an employee by an employer described in section 501(c) (3) [describing tax-exempt organizations] which is exempt from tax under section 501(a), or (ii) for an employee . . . who performs services for an educational institution . . . , by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing . . . , *then amounts contributed by such employer* for such annuity contract . . . shall be excluded from the gross income of the employee for the taxable year. . . ." (Emphasis added.)

It is this section that the Internal Revenue Service has utilized in this case to exclude from the taxpayer's gross income the amount of the annuity purchases for federal income tax purposes.

The taxpayer contends that the same result is reached for state income tax pur-

poses under A.R.S. § 43–112, subsec. b (6) which provides:

"If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under § 43–123(p) or if an annuity contract is purchased for an employee by an employer exempt under § 43–147(a) (4) *the employee shall include in his income the amounts received under such contract for the year received.*" (Emphasis added.)

To adequately understand the underlined portion of the above statute, it is necessary to read subsection 6 of A.R.S. § 43–112, subsec. b in connection with the entire section of A.R.S. § 43–112. This section is entitled "Gross income" and subsection a thereof defines in broad general terms what constitutes gross income. Subsection b is entitled "Exclusions from gross income" and proceeds to list certain items such as death benefits from life insurance and annuities purchased by the taxpayer which are not included in gross income. Since income is only taxed once, if the proceeds of annuities are excluded from gross income it would indicate that the premiums which purchased that annuity initially would have been included in gross income and therefore taxed in the year the premium was paid. Likewise, if a subsection b (6) annuity is included in gross income at the time it is received, then the contribution for such annuity must be excluded at the time of contribution.

In addition to the above-quoted language of A.R.S. § 43–112, subsec. b (6), subsection (6) of the Arizona statute goes on to say:

"If the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in paragraphs (2), (3) and (4). The consideration for the annuity is the amount contributed by the employee."

Paragraph (3), which would be applicable in this case, provides:

"Gross income also does not include amounts received as an annuity under an annuity or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contracts) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income."

Following the reasoning previously set forth, it would appear that it is only those contributions made by the *employer* to the annuity plan that are excluded from the gross income of the employee. From our analysis, the Arizona statute does not differ materially on this point from the Internal Revenue Code which provides: "amounts contributed by such *employer* . . . shall be excluded from the gross income of the employee. . . ." (Emphasis added.) 26 U.S.C.A. § 403(b).

It is obvious that the Internal Revenue Service has looked only to the fact that the "annuity contract is purchased for an employee by an employer" in exempting from gross income of the employee sums paid for nonforfeitable annuities. It is further obvious that the Internal Revenue Service has refused to consider the source of the funds that go into purchasing such annuities, and consider a salary reduction as a contribution from the employer. In the opinion of the court, this is a policy decision of the Internal Revenue Service determining, in the words of the Director of Internal Revenue Service in approving the § 403(b) deduction in this case, that "the institution will be deemed to have purchased an annuity contract for the employee within the meaning of Section 403(b) (1) of the Code, as amended. . . ."

We believe that the Internal Revenue's position in this matter is based upon a policy decision rather than upon a strict construction of the Internal Revenue Code because of two previous tax decisions—Zeltzerman v. C. I. R., 34 T.C. 73, aff'd, 283 F. 2d 514 (1 Cir. 1960) and Llewellyn v. C. I. R., 295 F.2d 649 (7 Cir. 1961). In the *Zeltzerman* decision, the court in interpreting § 22(b) (2) (B), Internal Revenue

Code of 1939 and § 403(a) (1), Internal Revenue Code of 1954,[2] held:

> "We think it obvious that in legislating with respect to annuity contracts purchased by exempt employers, Congress had in mind the usual type of annuity *purchased by an employer out of its funds* or by use of its funds and also contributions made by employees. *Of course, any contributions made by the employee would first have constituted taxable income to the employee.*" (Emphasis added.) 34 T.C. at 82.

In the *Llewellyn* case, the U.S. Court of Appeals was confronted with a factual situation similar to the one before the court. Dr. Llewellyn was an employee of two hospitals in Wisconsin and received as compensation from these institutions a stated percentage of the gross receipts of these institutions. Dr. Llewellyn entered into an agreement with the institutions whereby his employers were to deduct from his salary a stated sum and directed the use of these deducted sums to purchase for Dr. Llewellyn a retirement income annuity policy issued by Phoenix Mutual Life Insurance Company of Hartford, Connecticut. In determining whether these salary deductions were includable in the doctor's gross income, the court held, after quoting from *Zeltzerman*, that:

> "The amounts deducted from Dr. Llewellyn's percentage of the gross receipts and paid out, at his direction, to Phoenix Mutual, *were not employers' contributions, but were income constructively received by Dr. Llewellyn and as such constituted taxable income to him. . . .* In effect, Dr. Llewellyn made anticipatory assignments of part of his income to Phoenix Mutual." (Emphasis added.) 295 F.2d at 651.

While we have characterized the position of the Internal Revenue Service in this case as one of a policy nature, that is not to say that this policy decision was not based upon the realities existing between employers and employees. Insofar as the

employer and employee are concerned there is basically no difference between employee A who is paid a salary of $16,000 per annum and authorizes his employer to deduct $2,000 per year for the purchase of a nonforfeitable annuity policy and employee B whose contract of employment calls for an annual salary of $14,000 per year, and in addition provides that his employer shall purchase for him a $2,000 per annum nonforfeitable annuity policy. Realizing that employers do not normally out of the goodness of their corporate hearts gratuitously confer benefits on their employees not commensurate with services rendered, it would be patently unfair to exclude from gross income the $2,000 annuity of employee B because the contribution was made by the employer while disallowing the $2,000 annuity of employee A because the contribution was made by the employee. To countenance such a result would merely force the taxpayer to adopt the subterfuge of placing himself in the position of employee B.

As we previously indicated, the Internal Revenue Service, recognizing this inequity, has to some extent ignored the source of the contribution for the purchase of the annuity contract. We believe this reasoning is valid and therefore reject the admittedly logical interpretation of *Zeltzerman* and *Llewellyn* in favor of the more realistic approach of the Director of Internal Revenue Service. In so doing we hold that when "an annuity contract is purchased for an employee by an employer exempt under § 43–147(a) (4)" (A.R.S. § 43–112, subsec. b (6)), the premium paid for that annuity is not to be included in the employee's gross income for the taxable year in which the purchase was made.

We note the same result as reached here was reached by the Massachusetts court under an identical fact situation but upon different reasoning, in the case of Trustees of Amherst College v. Commissioner of Corporations and Taxations, 354 Mass. 503, 238 N.E.2d 351 (1968).

---

2. Insofar as annuities were concerned, the Internal Revenue Code at that time was worded exactly like the present Arizona Income Tax Statutes.

We also note that the legislature by the enactment of A.R.S. § 15–1198 authorizing employees of state educational institutions to participate in federal tax-sheltered annuity plans and allowing reductions in salary agreements to be entered into, has tacitly approved for the State of Arizona the conceptual interpretation of the Internal Revenue Service of tax-sheltered annuities.

The Commission has, for the first time on appeal, asserted that the Board of Regents is not an employer under A.R.S. § 43–147, subsec. a (4) (defining tax exempt organizations) and therefore does not come within the provisions of A.R.S. § 43–112, subsec. b (6). We have repeatedly held that appellate courts will not consider nonjurisdictional matters not presented to the trial court and presented for the first time on appeal. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966). We do not deem the Commission's argument on this point jurisdictional and see no reason to depart from our previous rulings in this regard. We therefore decline to consider this issue.

For the foregoing reasons the judgment of the trial court is affirmed.

HAIRE, P. J., and EUBANK, J., concur.