MORVILLE HOUSE, INCORPORATED *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION
(and a companion case[1]).

Suffolk.    December 3, 1975. — March 22, 1976.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Taxation,* Urban Redevelopment Corporation, Federal interest reduction payments, Gross income.    *Urban Redevelopment Corporation,* Taxation.

Federal interest reduction payments made to mortgagees of low and moderate income housing developments are not taxable as gross income under G. L. c. 121A, § 10, to the owners of the developments.    [932-938]

TWO BILLS IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on March 18, 1975.

The cases were reserved and reported by *Hennessey, J.*

*Robert J. McGee, Jr.,* for the plaintiffs.

*Thomas Miller,* Assistant Attorney General (*Howard Whitehead,* Assistant Attorney General, with him) for the defendant.

---

[1] Stanley H. Sydney & another *vs.* Commissioner of Corporations and Taxation.

HENNESSEY, C.J.    In these actions for declaratory judgments pursuant to G. L. c. 231A the parties have stipulated as to the issue of law presented for determination by this court and as to the material facts.[2]    The issue is whether Federal "interest reduction payments," authorized by 12 U.S.C. § 1715z-1 (1970),[3] are includible in gross income from all sources, and therefore taxable under G. L. c. 121A, § 10.[4]    The Commissioner of Corporations and Taxation (Commissioner) has assessed the "interest reduction payments" as an element of gross income under c. 121A, § 10, and asserts that the plaintiffs

---

[2] A single justice of this court has issued preliminary injunctions in these two cases restraining the Commissioner of Corporations and Taxation, until further order of this court, from taking any additional steps to assess or collect the moneys at issue from Stanley H. Sydney and E.T.C. Developers, Inc., and further restraining the Commissioner from requiring Morville House, Incorporated, to file a return of its gross income for 1974.

[3] 12 U.S.C. § 1715z-1(a) (1970) provides:  "For the purpose of reducing rentals for lower income families, the Secretary [of Housing and Urban Development] is authorized to make, and to contract to make, periodic interest reduction payments on behalf of the owner of a rental housing project designed for occupancy by lower income families, which shall be accomplished through payments to mortgagees holding mortgages meeting the special requirements specified in this section."    Section 1715z-1(c) provides that "[t]he interest reduction payments to a mortgagee . . . on behalf of a project owner shall be in an amount not exceeding the difference between the monthly payment for principal, interest, and mortgage insurance premium which the project owner as a mortgagor is obligated to pay under the mortgage and the monthly payment for principal and interest such project owner would be obligated to pay if the mortgage were to bear interest at the rate of 1 per centum per annum."

[4] General Laws c. 121A, § 10, as appearing in St. 1956, c. 640, § 4, provides in pertinent part:  "During the period of forty years after the organization of a corporation under this chapter [an urban redevelopment corporation], such corporation shall pay . . . an excise equal to the sum of the following:  namely, an amount equal to five per cent of its gross income . . . from all sources, and an amount equal to ten dollars per thousand upon the valuation . . . provided to be the fair cash value . . . of all real and tangible personal property of such corporation . . . ."

here will owe varying amounts to the Commonwealth pursuant to this assessment. We disagree, and hold that these "interest reduction payments" are not taxable income of the plaintiffs, and therefore may not be levied on nor considered by the Commissioner in determining their gross income under c. 121A, § 10.[5]

The plaintiffs are general partners of limited partnerships which own and operate low and moderate income housing developments ("projects") subject to G. L. c. 121A.[6] To attract private investment in low and moderate income housing Congress has provided special inducements to investors[7] such as the plaintiffs in the form of (a) tax shelters,[8] (b) so called operating subsidies,

---

[5] Our holding apparently conflicts with a recent ruling of the Internal Revenue Service wherein it was stated that, for Federal income tax purposes, "interest reduction payments" made on behalf of a limited-profit association are includible in gross income under Int. Rev. Code of 1954, § 61, and are deductible as interest paid or accrued on an indebtedness under Int. Rev. Code of 1954, § 163. Rev. Rul. 76-75, 1976 Int. Rev. Bull. No. 10, at 5. We conclude that this ruling does not control the cases at bar for reasons which will become clear in this opinion. See *Commissioner of Corps. & Taxation* v. *Thayer,* 314 Mass. 375, 378-379 (1943); *Commissioner* v. *First Security Bank,* 405 U.S. 394, 403 (1972).

[6] General Laws c. 121A, § 18C, as appearing in St. 1965, c. 859, § 1, provides in part that "associations of individuals in the form of . . . limited partnerships . . . may undertake projects under this chapter . . . which projects shall be exempt from taxation . . . provided that such . . . associations . . . shall: . . . (f) agree . . . that in consideration of exemption from taxation of real and personal property . . . on account of a project, they will pay the excises with respect to a project which a corporation would be bound to pay under the formulae and provisions set forth in section ten."

[7] The Commonwealth also has provided special inducements to investors such as the plaintiffs, but these inducements are not material to these cases. For discussion of the constitutionality of tax exemptions for investors in redevelopment projects see *Dodge* v. *Prudential Ins. Co.* 343 Mass. 375 (1961); *Opinion of the Justices,* 341 Mass. 760 (1960).

[8] For purposes of our decision the motivation of the plaintiffs in investing in low and moderate income housing is marginally relevant

and (c) Federal insurance of mortgage loans.   Pursuant to Federal law, the plaintiffs availed themselves of Federal mortgage insurance to underwrite the mortgage each limited partnership gave as security for a loan to finance construction of its respective "project."   Federal regulations provide, as a condition to securing the mortgage loan insurance, that the indorsement of a mortgage for insurance constitutes the execution of an "interest reduction payment contract" with respect to the insured mortgage between the mortgagee and the Commissioner of the Federal Housing Administration (FHA).   24 C.F.R. § 236.501 (1972).[9]   The "interest reduction payments" are paid directly to the mortgagee, and permit full payment of the level amortization mortgage instalments while requiring the plaintiffs to pay only such an amount over the life of the mortgage loan as would be required if the loan had been made at an interest rate of one per cent a year instead of the actual lending rate of seven per cent a year.   See note 3 *supra.*

The focal point of the disagreement between the plaintiffs and the Commissioner is that the Commissioner asserts that, to determine if the "interest reduction payments" constitute taxable income to the plaintiffs, the

---

at best.   We spend no time, therefore, in examining the tax shelter aspects of these transactions, which have been treated adequately elsewhere.   See, e.g., Halperin & Tucker, Low Income Housing (FHA 236) Programs:   One of Few Tax Shelter Opportunities Left, 36 J. Taxation 2 (1972); Kaster, Subsidized Housing:   Facts Versus Tax Projections, 26 Tax Law. 125 (1972); Meir, Tax Shelters and Real Estate:   The Rehabilitation of Low Income Housing, 7 Suffolk U.L. Rev. 1 (1972).   See also *Pennsylvania* v. *Lynn,* 501 F.2d 848, 865 & n.57 (D.C. Cir. 1974).

[9] Section 236.501 et seq. were codified in 1968 and, with the exception of amendments (insignificant for our purposes) in 1969 and 1970, have remained unchanged.   The limited partnerships' mortgages were insured and the mortgagees' contracts for "interest reduction payments" were executed in mid-1971 and early 1972.   For convenience we thus refer to the version of the Code of Federal Regulations revised as of January 1, 1972.

substance of the transaction, rather than its form, must be scrutinized to ascertain its substantial nature. *Commissioner of Corps. & Taxation* v. *Dalton,* 304 Mass. 147, 150 (1939). In substance, as the Commissioner views it, the plaintiffs and the Federal government agreed that the plaintiffs would sacrifice certain immediate profit incentives and incidents of ownership of the "projects" in consideration for the government's promise to make "interest reduction payments" on behalf of the plaintiffs. From the Commissioner's perspective, this agreement results in the payment by the Federal government of an obligation owed to the mortgagees by the plaintiffs. The Commissioner characterizes this arrangement as placing the plaintiffs in the same economic position that would have accrued to them if the "interest reduction payments" had been received by them in kind.

The Commissioner cites various Federal and Massachusetts precedents as establishing the general rule which he believes should govern these cases, i.e., that economic benefit or value (and therefore taxable income) has been at least constructively received by the plaintiffs through a partial discharge of the plaintiffs' obligations to the mortgagees by the Federal government. See, e.g., *Commissioner of Corps. & Taxation* v. *Newton,* 324 Mass. 409, 414 (1949), and cases cited; *Rutkin* v. *United States,* 343 U.S. 130, 136-139 (1952); *Helvering* v. *Horst,* 311 U.S. 112, 115-120 (1940); *Burnet* v. *Wells,* 289 U.S. 670, 678 (1933); *Old Colony Trust Co.* v. *Commissioner,* 279 U.S. 716, 729-730 (1929); *Sowell* v. *Commissioner,* 302 F.2d 177, 180 (5th Cir. 1962); *Reynolds* v. *McMurray,* 60 F.2d 843, 845 (10th Cir. 1932). The Commissioner cautions that to hold these "interest reduction payments" nontaxable to the plaintiffs because they are taxable as income to the mortgagees would effectively abolish the doctrine of constructive receipt in this Commonwealth and upset the State's entire income tax structure.

1. It is necessary to look outside of c. 121A, § 10, to determine whether these payments may be included with-

in the concept of gross income, since that term is nowhere defined in the statute.[10] The Commissioner does not object to applying the definition found in G. L. c. 63, § 30, cl. 5 (a), as appearing in St. 1967, c. 755, § 3, which pertains to the taxation of domestic business corporations.[11] This definition, in turn, incorporates by reference the definition of gross income in the Internal Revenue Code (Int. Rev. Code of 1954, § 61[a]), which states that "gross income means all income from whatever source derived . . . ."

Despite this sweeping language, we reject the Commissioner's arguments for two reasons. First, we note that government subsidies generally are not considered as generating taxable income to the recipient of the economic benefit. *State Tax Comm'n* v. *Gray*, 340 Mass. 535, 540 (1960) (social security benefits). *United Housing Foundation, Inc.* v. *Forman*, 421 U.S. 837, 855 (1975). See Rev. Rule 76-63, 1976 Int. Rev. Bull. No. 9, at 7; Rev. Rule. 75-271, 1975 Int. Rev. Bull. No. 28, at 8; Rev. Rul. 154, 1973-1 Cum. Bull. 40; Rev. Rul. 87, 1973-1 Cum. Bull. 39-40; Rev. Rul. 136, 1963-2 Cum. Bull. 19. The operation of this principle is perhaps clearest in this con-

---

[10] To be precise, the term was not defined in § 10 until just recently. Statute 1975, c. 827, § 7 (approved December 23, 1975), struck the § 10 which controls the present cases and inserted a new § 10 which provides in part: "For the purposes of this section, 'gross income' shall mean payments actually made by persons for the right to reside in or occupy any portion or all of the project and *shall not be deemed to include any payments made by any governmental unit to or on behalf of such corporation* or to or on behalf of any tenant of such corporation which are in addition to such payments actually made by such tenant" (emphasis supplied). However, as § 21 of St. 1975, c. 827, makes clear, "[t]he provisions of this act shall not be applicable to projects undertaken or for which applications pursuant to . . . [c. 121A] have been filed prior to the effective date of this act . . . ."

[11] General Laws c. 121A, § 10, provides that all the provisions of c. 63 relating to the assessment, collection, payment, abatement (and so forth) of taxes applicable to domestic business corporations are applicable to the excise payable under § 10. See note 4 *supra*.

text as it applies to the tenants of low and moderate income "projects" such as those operated by the plaintiffs in these cases. The tenants receive an economic benefit in the form of reduced rents since their rental charge is based in part on that portion of the mortgage amortization which is not covered by the Federal subsidy.[12] This kind of economic benefit, however, "no more embodies the attributes of income or profits than do welfare benefits, food stamps, or other government subsidies." *United Housing Foundation, Inc.* v. *Forman, supra.* By a logical extension of this reasoning, we conclude that the economic benefit realized by the plaintiffs (the reduction in their operating costs through payment of interest on the mortgages at the rate of one per cent a year) is not "translatable into an amount of taxable income." *Trustees of Amherst College* v. *Commissioner of Corps. & Taxation,* 354 Mass. 503, 507 (1968).

Second, were we to allow the plaintiffs to be taxed in these cases we would have to ignore the fact that the plaintiffs do not receive the "interest reduction payments," nor are they allowed to receive them under Federal law.[13]

---

[12] For a further example of a Federal subsidy available to the tenants of "projects" such as those here, see *Ross* v. *Community Servs. Inc.,* 396 F. Supp. 278, 285 (D. Md. 1975).

[13] The significance, in this Commonwealth, of receipt by the taxpayer as a condition precedent to taxability flows from language once employed by the Legislature in statutes relating to the taxation of personal income. See G. L. c. 62, §§ 1, 5 (repealed by St. 1973, c. 723, § 2, and now G. L. c. 62, § 2). In the statutes referred to, the phrase "income received by any inhabitant of the commonwealth" was used, whereas the language of our corporate income statutes (specifically, G. L. c. 63, § 30, cl. 5 [a]) and the relevant Internal Revenue Code section make no mention of receipt by the taxpayer. Indeed, all the Massachusetts cases on actual or constructive receipt of income by the taxpayer, brought to our attention by both sides in these disputes, dealt with controversies arising under the provisions of the former c. 62. The Commissioner, nevertheless, accepts as applicable to a tax assessed under our corporate income statute the requirement that a taxpayer actually or constructively receive income before it is taxable to him.

As Mr. Justice Powell, writing for a majority of the Justices of the United States Supreme Court, recently said: "We know of no decision of this Court wherein a person has been found to have taxable income that he did not receive and that he was prohibited from receiving. In cases dealing with the concept of income, it has been assumed that the person to whom the income was attributed could have received it. The underlying assumption always has been that in order to be taxed for income, a taxpayer must have complete dominion over it." *Commissioner* v. *First Security Bank,* 405 U.S. 394, 403 (1972).

The doctrine of constructive receipt of taxable income, as the plaintiffs point out, has been used sparingly in this Commonwealth. It has been recognized, although not applied, in certain contexts. *Commissioner of Corps. & Taxation* v. *Newton,* 324 Mass. 409, 414 (1949) (transfer of property of dissolved partnership to newly formed corporation; greater value assigned to property on corporate books). *Commissioner of Corps. & Taxation* v. *Williston,* 315 Mass. 648, 651-653 (1944) (gift of interest coupons of corporate bonds from taxpayer to his daughter). *Commissioner of Corps. & Taxation* v. *Thayer,* 314 Mass. 375, 377-379 (1943) (portion of dividends from stock in Canadian corporation withheld from taxpayer by corporation and paid to Canadian government). In *State Tax Comm'n* v. *Fitts,* 340 Mass. 575, 579-580 (1960), we held, for the first time, that the doctrine applied where the taxpayers attempted to avoid the income tax through a sham transaction, but "could have received . . . [the income] whenever they desired." See *State Tax Comm'n* v. *New England Merchants Nat'l Bank,* 355 Mass. 417, 419-420 (1969); *Dewey* v. *State Tax Comm'n,* 346 Mass. 43, 47 (1963). We have made clear, however, that the doctrine is not applicable where no *present* material benefit equivalent to the receipt of income is realized by a taxpayer, though he may receive the right to *future,* taxable income according to the

terms of the transaction challenged.  *Trustees of Amherst College* v. *Commissioner of Corps. & Taxation*, 354 Mass. 503, 506 (1968) (annuity contracts).  *Commissioner of Corps. & Taxation* v. *Kellaway*, 317 Mass. 192, 194 (1944) (life insurance annuity).  The reasoning of the cases just mentioned leaves no room for the Commissioner's assertion that the plaintiffs have constructively received taxable income in the circumstances of the instant cases.

The main thrust of the Commissioner's argument, however, skirts our precedents and relies heavily on decisions of lower Federal courts and the United States Supreme Court in constructive receipt cases decided under the Internal Revenue Code.  These cases proceed on the theory that a taxpayer receives taxable income when his debts are satisfied or cancelled, whether this is achieved through the efforts of some third party who owes the taxpayer an obligation, or through the efforts of the taxpayer himself. See *Commissioner* v. *Jacobson*, 336 U.S. 28 (1949); *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, 729-730 (1929).[14]

We cannot agree with the Commissioner that this theory is directly applicable to the cases before us.  Part of the difficulty in applying the Commissioner's analysis is that the symbiotic relationship between the Federal government and the plaintiffs is not readily perceived when it must be framed in debtor-creditor language.  If we examine the Federal scheme for providing "interest reduction payments" to the mortgagees, we are impressed most by the nexus between securing mortgage insurance and the receipt of these payments.  This scheme indicates that, while "project" investors are intimately involved in and certainly interested in securing insurance from the

---

[14] It should be noted that we, too, long have recognized that transactions of this nature could result in receipt of income by a taxpayer. See, e.g., *Commissioner of Corps. & Taxation* v. *Dalton*, 304 Mass. 147, 152 (1939).

Federal government for the mortgage they give, the essential contract aspects of approval of an insurance application are a matter which the mortgagee and the Federal government must work out.

12 U.S.C. § 1715z-1(j) (1) (1970) states that "[t]he Secretary [of Housing and Urban Development] is authorized, *upon application by the mortgagee,* to insure a mortgage . . . which meets the requirements of this subsection" (emphasis added). The regulations promulgated pursuant to 12 U.S.C. § 1715z-1 (h) further specify that "[a]n application for issuance of either a conditional or firm commitment for insurance of a mortgage on a project shall be submitted by an approved mortgagee and by the sponsors of such project through the local FHA office . . . .," and that "[n]o application shall be considered unless . . . [t]he [Federal Housing] Commissioner has allocated to the project contract authority for interest reduction payments." 24 C.F.R. § 236.5(a), (b) (2) (1972). See Tatar, The Investor and the Section 236 Housing Program, 8 Houston L. Rev. 876, 882 (1971). These regulations make it clear that the indorsement of a mortgage for insurance binds the Federal government and the *mortgagee or lender* just as if they had executed a contract which incorporated the requirements of the Federal regulations relating to, inter alia, termination of the insurance coverage, default procedure, insurance claim requirements and assignment of the mortgage. Compare 24 C.F.R. § 236.251 (1972) with 24 C.F.R. § 207.251 et seq. (1972). Finally, as we have mentioned previously, the regulations dealing specifically with the "interest reduction payments" refer to the "interest reduction payment contract between the mortgagee and the [FHA] Commissioner" which is deemed executed upon indorsement of the mortgage for insurance. 24 C.F.R. § 236.501 (1972).

Strictly speaking, there is no obligation on the part of the Federal government, running to the plaintiffs, to make the "interest reduction payments." The govern-

ment's obligation runs to the mortgagees. Since the mortgage terms and notes executed by the plaintiffs evidence that they assumed no personal liability for the payment of any money to the mortgagees in the event of default,[15] it is clear that the mortgagees look to the guaranty of the Federal government for satisfaction if they are not paid. See *Trans-Bay Eng'rs & Builders, Inc.* v. *Lynn,* 396 F. Supp. 265, 268 (D.D.C. 1975). The upshot of the Federal regulatory scheme, as we see it, is to render persons in the position of the plaintiffs here as "outsiders"; incidental beneficiaries of an accommodation worked out by the lender and the provider of the operating subsidy. Thus, with regard to the "interest reduction payments," we do not conclude that the Federal government is satisfying or procuring a discharge of the plaintiffs' obligations in order to offset a debt running from the Federal government to the plaintiffs, nor can we say that the plaintiffs themselves have procured a cancellation or reduction of their indebtedness.

*Sowell* v. *Commissioner,* 302 F.2d 177, 179-180 (5th Cir. 1962), cited by the Commissioner in support of his theory, is plainly distinguishable. In that case the taxpayer was held to have constructively received income from an oil and gas lease because income which in the normal course of events would have accrued to him was paid to a mortgagee to reduce a mortgage debt which burdened the taxpayer's property. The decision in *Reynolds* v. *McMurray,* 60 F.2d 843, 845 (10th Cir. 1932), turns on the same general point.

2. The cases are remanded to the county court with instructions that judgments be entered declaring the Federal "interest reduction payments" not taxable as gross income to the plaintiffs under G. L. c. 121A, § 10.

*So ordered.*

---

[15] See Halperin & Tucker, Low Income Housing (FHA 236) Programs: One of Few Tax Shelter Opportunities Left, 36 J. Taxation 2 (1972).