COUNTY COMMISSIONERS OF NORFOLK COUNTY *vs.* BOARD OF NORFOLK COUNTY RETIREMENT SYSTEM.

Norfolk. February 8, 1979. — April 2, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*County*, Commissioners, Retirement board. *Retirement Board.*

The requirements of G. L. c. 35, § 28, that each board or agency whose activites are maintained or supported wholly or in part by county funds should furnish the county commissioners with a detailed statement of its expected administrative expenses for the ensuing fiscal year is applicable to county retirement systems. [696-702]

CIVIL ACTION commenced in the Superior Court on January 5, 1976.

A motion for summary judgment was heard by *Sullivan*, J.

377 Mass. 696                                                                  697

County Comm'rs of Norfolk County v. Board of Norfolk County Retirement System.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Judith K. Wyman (James R. DeGiacomo* with her) for the defendant.

*Mark A. Helman* for the plaintiffs.

KAPLAN, J. In 1974, and again in 1975, the board of the Norfolk County retirement system refused to furnish the county commissioners of Norfolk County (herein sometimes called "retirement board" and "county commissioners") with a detailed statement of its expected administrative expenses for the ensuing fiscal year. This was contrary to the express terms of G. L. c. 35, § 28 (1949 statute).[1] On January 5, 1976, the county commissioners brought the present action in the nature of mandamus for a judgment against the retirement board commanding it to comply with the statute. The retirement board moved with a supporting affidavit to dismiss the action, claiming that the cited statute was inapplicable to county retirement systems. A judge of the Superior Court granted summary judgment in favor of the county commissioners on April 26, 1977, directing the retirement board to supply the information for fiscal 1978. We transferred the retirement board's appeal to this court on our own motion, and we now affirm.

A retirement board has to take steps to ensure payments by governmental employers into three funds —

---

[1] The pertinent text of G. L. c. 35, § 28, introduced into § 28 by St. 1949, c. 481, § 1, is: "On or before December fifteenth in each year, the head of each department or institution, and each board or other agency whose activities are maintained or supported wholly or in part by county funds, shall submit to the county commissioners, in writing, a statement of their requirements for the ensuing year, including number and cost of personnel, quantities and estimated cost of supplies and equipment and any other proposed expenditures, in sufficient detail to enable said commissioners to explain any increase or decrease as compared with the appropriation of the previous year."

The dispute in the present case is limited to administrative expenses of the retirement board.

pension, special military service credit, and administrative expense. (Two other funds, the annuity savings fund and annuity reserve fund, are contributed by covered employees.) By October 15 of each year, the board transmits to an actuary in the division of insurance sufficient information to enable him to ascertain the amount needed for the pension fund for the following fiscal year. By December 15 the actuary in turn notifies the retirement board of the anticipated cost of the pension fund and the percentages due from each governmental unit in the county; thus are obtained the amounts to be contributed to that fund by the county and each district and town therein. The retirement board has meanwhile calculated the amounts required for the military service and expense funds, and, using the percentages received from the actuary, is in a position to set up a table of the sums to be contributed by the county, districts, and towns to all three funds. All this is provided for by G. L. c. 32, § 22 (7) (1945 statute).

Each year the county commissioners are required to prepare estimates of county receipts and expenditures for the following year, and to explain to the General Court any differences between the items as estimated and the amounts appropriated for the same items for the preceding fiscal year.[2] To aid the county commissioners in this task, every board or agency "supported wholly or in part by county funds" — this includes county retirement boards — must by December 15 provide the county commissioners with a detailed statement of the expenses expected to be incurred in the next fiscal year, itemized as to personnel, supplies, and so forth. The statement is to

---

[2] The requirement that the General Court must receive estimates of county expenditures, and authorize the associated county tax, was first enacted by St. 1781, c. 22. The present practice of requiring the commissioners to provide explanations of all changes in expenditures was adopted by St. 1911, c. 447, and, as noted, the requirement that county boards submit detailed expense statements was added by St. 1949, c. 481, § 1.

377 Mass. 696                                    699

County Comm'rs of Norfolk County v. Board of Norfolk County Retirement System.

be in sufficient detail to enable the county commissioners to furnish the required explanation. The county commissioners are not bound to approve agency estimates as submitted, or to include them in their proposed budget. This is set out in G. L. c. 35, § 28 (1949 statute).

By January 1, the retirement board transmits to the county commissioners the amounts, which need not be detailed, required for the three funds, and their allocations to county, districts, and towns. G. L. c. 32, § 22 (7) (c) (ii).

The districts and towns make good the amounts chargeable to them by payment direct to the treasurer-custodian of the county retirement system. *Id.* With respect to the charge against the county, the county commissioners receive advice from an advisory board on county expenditures which is required to hold at least one public hearing on the county budget as a whole. The recommendations of the advisory board are not binding on the county commissioners; but if a recommendation is not followed, the advisory board may by a two-thirds vote delete or reduce the relevant item in the proposed budget. G. L. c. 35, § 28B.

By March 1, the proposed budget for the county passes to the General Court, this step being preceded by an analysis and report by the director of accounts in the Department of Revenue. G. L. c. 35, § 28. Available to the General Court would be the charges against the county for the three retirement board funds, the explanatory statement of any differences between the sums requested by the retirement board and the corresponding amounts in the previous year, and the breakdown of projected administrative expenses. To complete the story, the General Court, informed as indicated, makes appropriations, authorizing the county commissioners of each county to levy a county tax equal to the difference between estimated expenditures and revenues. See G. L. c. 35, § 29. Cf. *Opinion of the Justices*, 349 Mass. 804 (1965).

To return to the precise quarrel: The retirement board claims exemption from the requirement of the 1949 statute that boards receiving county support furnish breakdowns of projected administrative expenses; and this, apparently, would mean that the county commissioners would be unable to provide the General Court with the corresponding explanations. The best reason the retirement board can offer for the claimed exemption, which would defy the words of the 1949 statute, is that the 1945 statute, directed to retirement boards, requires them to submit to county commissioners only the projected amount of the expenses; it does not in terms require a breakdown. The retirement board cannot claim that the earlier statute repeals (impliedly) the later one, so it argues, instead, that there was no intention, by the later statute, applicable to the larger class of boards, to affect the earlier statute, addressed only to retirement boards. Cf. *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118 (1973).

Primarily the retirement board relies on a sentence in the 1945 statute which, it contends, should be read to mean that the aggregate, undetailed estimate for administrative expenses submitted by the retirement board on January 1 must be included without change in county appropriations for the following fiscal year.[3] The retirement board argues that the county commissioners are deprived with respect to this estimate of the power they exercise ordinarily under the 1949 statute to review and

---

[3] The retirement board relies on the second sentence of the following text, quoted from G. L. c. 32, § 22(7)(c)(ii): "The board of each such county contributory retirement system shall, on or before the January first next following the receipt of such notice from the actuary, certify to the county commissioners of any such county the amounts necessary to be paid for such fiscal year for the three aforesaid funds of any such system by each governmental unit the employees of which are members thereof. Items of appropriation providing for any such amounts allocated to such county shall be included in the appropriations for such fiscal year for such county for the several funds of such system."

377 Mass. 696 701

County Comm'rs of Norfolk County v. Board of Norfolk County Retirement System.

approve or deny the estimates submitted to them by boards and other agencies, and the General Court would, evidently, also receive this estimate intact and unexplained and have to allow it. On this assumption they say the detailed information called for by the 1949 statute would serve no purpose and they need not furnish it.

The retirement board's interpretation is not at all self-proving, but this is not the occasion for resolving the question.[4] Even if the board's interpretation were accepted, exemption from the requirement of the 1949 statute would not follow. It would take a most persuasive positive demonstration of legislative purpose to overcome the plain text, and we are not prepared to disregard the text because of a conjecture that no legislative purpose would be thwarted thereby. See *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974); *Massachusetts Financial Servs., Inc.* v. *Securities Investor Protection Corp.*, 545 F.2d 754, 756 (1st Cir. 1976), cert. denied, 431 U.S. 904 (1977), and cases cited.

Further, the retirement board's argument supposes that the sole purpose of the requirement that the estimate be detailed is to afford a basis for its possible revision. But the requirement can also be understood as having the independent purpose of informing the Legislature (and thus the public) of the expenses of agencies supported with county funds. The explanation of "any difference between the amount of any such estimate and the latest appropriation for the same purpose" cannot be made in any muscular way without the detailed information sought to be elicited by the 1949 statute. Cf. *Bell* v. *Assessors of Cambridge*, 306 Mass. 249 (1940).

The retirement board attempts to support its position by pointing to supposed alternative safeguards in the 1945 statute, but the argument is unconvincing.[5]

---

[4] The sentence in question (see n.3) can be understood as simply requiring the county commissioners to include some figure for each of the three funds; the manner of reaching the figure to be forwarded by the commissioners would be described mainly by G. L. c. 35, § 28.

[5] The retirement board refers to its own statement of its financial condition filed by March 1 of each year with the Commissioner of

The defense to the present action appears weak, and an ironic note is added by the reflection that the data which the retirement board has refused to hand over to the county commissioners might well—though we do not decide the point—be open to inspection by members of the public upon request under G. L. c. 66, § 10. See G. L. c. 4, § 7; *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812 (1978).[6]

*Judgment affirmed.*

---

Insurance (c. 32, § 23 [2] [e]), and to triennial review by the Commissioner to ascertain a retirement system's "financial condition, its ability to fulfil its obligations, whether all parties in interest have complied with the laws applicable thereto, and whether the transactions of the board have been in accordance with the rights and equities of those in interest" (c. 32, § 21 [1] [a]). We note again that the clear terms of the 1949 statute should not be disregarded on the basis of speculation that they are supererogative. Nor has the retirement board shown whether or how the cited statutes provide for review of administrative expenses, or ensure annual full disclosure of projected expenditures of county retirement systems to the county commissioners and the General Court.

The board perceives some awkwardness in the fact that it may receive the percentages from the actuary as late as December 15, the same day on which it is required to submit detailed expense information to the commissioners. But the board should have prepared its expense data previously, and it need then only apply the percentages as received from the actuary. (And, after all, better slightly late than never.)

[6] Cf. *Gainsville* v. *State ex rel. Int'l Ass'n of Firefighters, Local No. 2157*, 298 So. 2d 478 (Fla. 1974); *Caple* v. *Brown*, 323 So. 2d 217 (La. App. 1975); *Dunlea* v. *Goldmark*, 54 App. Div. 2d 446 (N.Y. 1976), aff'd, 43 N.Y.2d 754 (1977); *Welt* v. *Board of Educ. of Union Free School Dist. No. 23*, 68 Misc. 2d 1061 (Sup. Ct.), aff'd, 39 App. Div. 2d 1018 (N.Y. 1972).